LAMBERT SNYDER CO. v. AMERICAN VIBRATOR CO. et al.

(Circuit Court, D. Maryland. August 8, 1906.)

PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

    Evidence considered, on a motion for a preliminary injunction to restrain infringement of a patent, and *held* not to sustain the claim of the defendant that the infringing articles sold by him were the same that had been seized and sold under an attachment against a licensee of complainant, and an injunction against their sale granted, their infringing character being clear.

In Equity. Suit for infringement of patent. On motion for preliminary injunction.

Wm. R. Davis and Chas. D. Davis, for complainant.

Wm. D. L. Borum and Edward N. Rich, for defendants.

MORRIS, District Judge. This is an application for preliminary injunction to restrain the sale of a device manufactured under patent No. 773,234, October 25, 1904, for improvement on vibratile apparatus granted to Lambert Snyder, assignor to the Lambert Snyder Company. The Lambert Snyder Company granted a license, dated November 2, 1904, to the Lambert Snyder Vibrator Company, to manufacture and sell the patented device, and acting under that license the Lambert Snyder Vibrator Company contracted with the Bayldon Machine & Tool Company of Jersey City to make for it certain parts of the device and to assemble them, together with other parts to be furnished by the vibrator company, thus making the completed device. Contentions arose, and the vibrator company refused to pay the balance of the manufacturing company's bill, amounting to $470.45. Thereupon, the manufacturing company, in order to pay their unpaid account, issued process of attachment against the vibrator company and levied upon the goods in their own possession, and the sheriff sold them to a purchaser, who bought them in for the manufacturing company.

The defendant Jenkins in this case has adopted the name of the American Vibrator Company, and claims to have purchased directly

or indirectly the goods thus sold to the manufacturing company, and has set up in the business, as a rival competing with the Lambert Snyder Company, the complainant, the owner of the patent.

The complainant contends that the license to the Lambert Snyder Vibrator Company had been revoked and surrendered on November 2, 1905, for nonpayment of the royalty contracted for, and that when the sheriff's sale took place the licensor had no right to manufacture or sell the device. I do not find it necessary to pass on this question. It must be conceded however, that if the goods now being sold by the defendant are not the goods seized and sold by the sheriff, then the defendant is selling the patented device in defiance of the rights of the patentee. There is no schedule of the goods actually seized and sold by the sheriff, and there is no definite statement, from any authentic source whatever, of just what was seized and sold. At the first hearing on April 23, 1906, the attention of the defendant was expressly called to this; but, notwithstanding a sufficient time has elapsed, the omission has not been supplied.

From the evidence which has been produced, it appears that the account upon which the attachment was based was for parts of devices manufactured from December, 1904, to September, 1905, on account of which $615 had been paid, leaving due $470.45. A large proportion of these devices undoubtedly had been delivered, and it is so stated by Belden, general manager of the tool works. It seems reasonably certain that the Bayldon Machine & Tool Company could not then have had remaining on hand more than 1,500 of the devices, supposing all the parts to have been assembled and the devices complete, and starting with that, as the extreme quantity bought in by the tool company at sheriff's sale December 7, 1905, it is impossible to believe, as the defendant now asserts, that about January 16, 1906, he or his predecessor in business purchased from the Bayldon Machine & Tool Company, between 4,000 and 5,000 of the plaintiff's vibrators, which enables them to enter the business in a large way in competition with the complainant. This startling discrepancy was made apparent at the first hearing April 23, 1906, and the application was adjourned over to give the defendant an opportunity of explaining it; but no satisfactory explanation has been given.

The devices now being sold by the defendant are unquestionably made in accordance with the patent of the complainant, but it is impossible to believe that they are those sold at the sheriff's sale.

The license to the vibrator company was surrendered to the parent company on November 2, 1905, and, to say the least, no more vibrators could be lawfully made under it after that date. The affidavits make it reasonably certain that the 4,000 or 5,000 devices sold by the tool company, and which the defendant is now selling, were made, not under any contract with the licensee, but in defiance of the plaintiff's rights, and the sale of them should be enjoined.